MARY LANDERS *vs.* CITY OF BOSTON & others.

Suffolk.    February 5, 6, 1929. — March 27, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON & FIELD, JJ.

*Tax*, Collection by sale, Betterment.

Under G. L. c. 60, § 61, a city or town, which has purchased land sold for the nonpayment of taxes for a certain year and has become the holder of a valid tax deed thereon, cannot thereafter sell the land again for the nonpayment of the taxes for subsequent years: the city or town is protected sufficiently by the continuance of its lien for the payment of those taxes; and, in a petition in the Land Court for the registration of title to land, wherein a city filed an answer claiming rights in the land under certain tax deeds, a ruling requested by the city, that "no tax deed held by the city . . . is invalid because the city . . . was the holder of a prior tax title upon the same property," properly was refused.

The statutory procedure found in the provisions of G. L. c. 60, for curing a supposedly defective tax title does not authorize a city or town holding a tax deed which is invalid because of noncompliance with that statute to sell the land again, even though the later sale is in conformity with the statute.

G. L. c. 80, § 4, requires that all unpaid assessments constituting a lien on real estate and unpaid taxes thereon shall be collected together as one item; and the city or town cannot conduct separate sales and give separate deeds for such unpaid taxes and unpaid assessments.

PETITION, filed in the Land Court on January 27, 1922, for the registration of title to land.

The city of Boston filed an answer to the petition, claiming rights in the land under certain tax deeds. The case was referred to a master, who found that such tax deeds were invalid. The case thereafter was heard by *Smith*, J., who refused certain rulings requested by the respondent city as described in the opinion. An interlocutory decree was entered confirming the master's report. The judge found that the petitioner had a title proper for registration and ordered the entry of a final decree accordingly. The city alleged exceptions.

The case was argued at the bar in February, 1929, before

*Rugg*, C.J., *Pierce, Carroll, Wait,* & *Field*, JJ., and afterwards was submitted on briefs to all the Justices.

*W. J. O'Malley*, Assistant Corporation Counsel, for the city of Boston.

*A. W. Eldredge*, for the petitioner.

PIERCE, J.   This is a petition in the Land Court to register the title to several lots of land in the city of Boston, including lot No. 100 West Selden Street, lot No. 2 Crossman Street, and lot No. 53 Delhi Street.   The city of Boston holds numerous tax titles on all these lots, and objects to the confirmation of so much of the master's report as holds that the abovementioned tax deeds on the lots in question were invalid because the city of Boston already had tax deeds upon the said lots.

The city of Boston excepted to the refusal of the court to rule (1) "That no tax deed held by the city of Boston in the above entitled cause is invalid because the city of Boston was the holder of a prior tax title upon the same property"; (2) "That if the city of Boston sold the property for unpaid taxes or assessments and on account of some noncompliance with the statute the said deeds were invalid and later the city of Boston sold the same premises again for unpaid taxes or assessments and conformed to the terms of the statute in the later sale, the later deeds are valid deeds"; (3) "That the city of Boston had the right to sell the property for unpaid annual taxes and for unpaid assessments and to give separate deeds for the unpaid annual taxes and for the unpaid assessments"; (4) "That a tax deed for an assessment is different in its nature than a tax deed for an annual tax in that an assessment follows and is a lien upon the land upon which it is assessed and the annual tax is against the person who owns the land when the assessment for the annual tax is made"; and (5) "That G. L. c. 60, § 61, does not by its terms prevent a city from selling property for taxes or assessments and the giving of a tax deed for the same property upon which it already is the holder of a tax title."

St. 1919, c. 263, entitled "An Act relative to the liens of cities and towns on real estate taken for non-payment of taxes" (now G. L. c. 60, § 61), reads: "Whenever a city or

town shall have purchased or taken real estate for payment of taxes the lien of the city or town on such real estate for all taxes assessed subsequently to the assessment for payment of which the estate was purchased or taken shall continue, and it shall not be necessary for the city or town to take or sell the said real estate for non-payment of said subsequent taxes, costs and interest; and on either redemption from, or foreclosure of the right of redemption under, such taking or purchase, said subsequent taxes, costs and interest shall be paid to the city or town, and the payment shall be made a part of the terms of redemption." This statute was enacted at the session of the Legislature which convened next after the decision, on June 25, 1918, of *Chadwick* v. *Cambridge,* 230 Mass. 580, wherein it was held that where a city becomes the purchaser of land sold by its collector of taxes at a tax sale, it receives a title subject to the later and paramount lien that may arise from taxes assessed after those for the further collection of which the sale was made.

The purpose of the statute is twofold, (1) to relieve the city or town from redeeming land which it has purchased for payment of taxes from the paramount lien which arises from taxes assessed after those for the collection of which the sale was made; and (2), to save to the taxpayer and owner the costs and expenses which are an incident of any sale for subsequent taxes. When the city or town purchases land for the nonpayment of taxes under the quoted statute it manifestly is unnecessary for the city or town to take or sell the land purchased for nonpayment of subsequent taxes, costs and interest, for the reason that on a petition of the city or town in the Land Court for foreclosure of rights of redemption, G. L. c. 60, §§ 64 *et seq.,* the petition will be granted unless the person entitled to redeem "shall . . . within a time fixed by the court" pay to the petitioner "an amount sufficient to cover the original sum, costs, interest at the rate of eight per cent per annum, and all subsequent taxes, costs and interest to which the petitioner may be entitled under section sixty-one or sixty-two, together with the costs of the proceeding and such counsel fee as the court deems reasonable." G. L. c. 60, § 68.

Assuming the purchase by the city or town to be valid, the intent of the statute is plain that it shall not again sell the purchased real estate for payment of taxes but shall have a lien thereon until a redemption or foreclosure of the right to redeem. This view of the purpose of G. L. c. 60, § 61, is supported by St. 1927, c. 126, § 2 (amending § 50 of G. L. c. 60), which reads: "If the town becomes the purchaser, the deed to it, in addition to the statements required by section forty-five, shall set forth the fact that no sufficient bid was made at the sale or that the purchaser failed to pay the amount bid, as the case may be, and shall confer upon such town the rights and duties of an individual purchaser. Every such deed and every instrument of taking described in section fifty-four shall be in the custody of the town treasurer, and there shall be set up on the books of the town, whether kept by the treasurer or otherwise, a separate account of each parcel of land covered by any such deed or instrument, to which shall be charged the amount stated in the deed or instrument, the cost of recording the same, all uncollected taxes assessed to such parcel for any year subsequent to that for the taxes for which such parcel was purchased or taken, with all legal costs and charges, until redemption or foreclosure. The town treasurer, at the expiration of two years from the date of any such purchase or taking, shall institute proceedings for foreclosure." It results that the first and fifth exceptions are overruled.

The second exception presents the question of the applicability of § 61 of G. L. c. 60 when for any reason the purchase by the city or town for payment of taxes and the deed received are invalid. Section 45 of that statute, after providing what statements the collector's deed shall contain, continues: "Such deed shall not be valid unless recorded . . . and if so recorded it shall be *prima facie* evidence of all facts essential to the validity of the title thereby conveyed . . . ." Section 64 provides that "The title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by decree of the Land Court." Section 68 provides for the appearance in the Land Court of any one claiming an interest in the title,

for an answer setting forth his right in the premises, for an offer to redeem upon such terms as may be fixed by the court, for a hearing and for allowing redemption on payment of the "original sum, costs, interest . . . and all subsequent taxes, costs and interest to which the petitioner may be entitled under section sixty-one or sixty-two . . . ." Section 69 provides for a decree barring redemption: "If a default is entered under section sixty-seven, or on motion for failure to file answer, or if redemption is not made within the time and upon the terms fixed by the court under the preceding section, or if at the time fixed for the hearing the person claiming the right to redeem does not appear to urge his claim, or if upon hearing the court determines that the facts shown do not entitle him to redeem, a decree shall be entered which shall forever bar all rights of redemption." Section 70 provides for questions relating to the validity of title and how such questions shall be raised: "If a person claiming an interest desires to raise any question concerning the validity of such a title, he shall do so by answer filed in the proceeding within ten days after filing his appearance, or within such further time as may on motion be allowed by the court, or else be forever barred from contesting or raising the question in any other proceeding. He shall also file specifications setting forth the matters upon which he relies to defeat the title; and unless such specifications are so filed, all questions of the validity or invalidity of the title, whether in form of deed or proceedings relating to the sale or taking, shall be deemed to have been waived. Upon the filing of the specifications the court shall hear the parties, and shall enter a decree in conformity with the law on the facts found." Section 37 provides for the case where the collector recognizes the defect in the tax title and accepts a release from the holder of the deed, and for the case where the sale or taking has been finally adjudged invalid by a court of competent jurisdiction, that the lien shall continue for ninety days after such release or adjudication, thus giving time for a reassessment in case the original assessment was defective or for another advertisement and sale in case the defect was in the sale or in the collector. Section 82 provides that the

collector may within two years after the date of the deed of the land sold for taxes, if he has reasonable cause to believe the sale is invalid, require the holder of the tax deed to surrender; and section 84 provides "If the collector has reasonable cause to believe that a tax title, held by a town under a sale or taking for non-payment of a tax, is invalid by reason of any error, omission or informality in the assessment, sale or taking, he may disclaim and release such title by an instrument under his hand and seal, duly recorded in the registry of deeds."

G. L. c. 60, § 78, reads: "Before foreclosure or redemption, taxes on land taken or purchased by a town shall be assessed to the person to whom they would be assessed if the land had not been so taken or purchased. In case of a sale under the following section, such taxes shall be deducted from the proceeds thereof, before any surplus is disposed of as therein provided. In case of foreclosure, any such taxes of which the lien has not expired shall be credited to the collector as if collected by him."

The statutory procedure in case of a supposedly defective tax title confers on a city or town the means whereby it may secure a valid title to the estate described in the tax deed held by it. The receipt of the collector's deed and the allowance to him of the amount of the tax, interest and charges on the estate described in the deed, constitute a purchase of the estate sold for taxes within the meaning of § 61, and the deed received is *prima facie* valid until its invalidity is established in the Land Court at a hearing to foreclose the right of redemption under G. L. c. 60, §§ 68 and 70. The second exception is overruled.

The third and fourth exceptions are essentially the same, and relate to the power of a city or town to sell for the annual taxes and for various special assessments of the same year on the same property, by separate sale, and to give separate deeds to the purchaser.

G. L. c. 80, § 4, the betterments statute, reads: "Within a reasonable time after making the assessment the board shall commit the list of assessments upon land in each town with their warrant to the collector of taxes thereof, and he shall

forthwith send notice in accordance with section three of chapter sixty, to the person to whom each parcel was assessed at the last preceding annual assessment of taxes. Except as otherwise herein provided, the collector shall have the same powers and be subject to the same duties with respect to such assessments as in the case of the annual taxes upon real estate, and the law in regard to the collection of the annual taxes, to the sale of land for the non-payment thereof and to redemption therefrom shall apply to assessments made under this chapter, so far as the same are applicable; but the owner of land assessed shall not be personally liable for the assessment thereon. Every collector of taxes receiving a list and warrant from the board shall collect the assessment therein set forth, and at such times as the board shall direct shall pay over to the treasurer of the body politic on behalf of which the assessment was made the amounts collected by him. All assessments apportioned under section thirteen, and all other assessments on real estate constituting a lien thereon and remaining unpaid on April first in any year, shall be placed on the annual tax bill for such real estate."

The provision that "All assessments apportioned under section thirteen [G. L. c. 80, § 13] and all other assessments on real estate constituting a lien thereon and remaining unpaid on April first in any year, shall be placed on the annual tax bill for such real estate" evidently was enacted to permit the collection of the entire amount as one item, whether by payment or sale, one summons, one advertisement, one sale, one deed, and one bill of costs. The master pertinently notes that lot 2 was sold for an annual tax assessed for the year 1920, and that on the same day the lot was sold by separate sales for assessments for sewer, street construction and gypsy moth suppression, all for the year 1920; that the sum of the annual tax and the above named assessments was $28.12; that the costs charged against this one lot for the four sales was $19.73, but if one sale had been made the costs and charges would not have exceeded $7 or $8. It is plain these several sales were unnecessary and added unwarranted costs and expenses to the charges against the estate. In case of the collection by sale authorized under § 4,

*supra,* we cannot perceive that there should be any difference in the procedure of collection, because the owner of the land assessed is not personally liable for an assessment and he is liable for an annual tax.

The refusal of the several requests for rulings to which exceptions were. taken was right; and the entry is

*Exceptions overruled.*