SARAH SNOW *vs.* CITY OF MARLBOROUGH.

Suffolk.    May 23, 1938. — November 2, 1938.

Present: FIELD, C.J., DONAHUE, DOLAN, & COX, JJ.

*Tax*, Sale, Recovery of amount paid for invalid tax title.

Under G. L. (Ter. Ed.) c. 60, § 61, a municipality which purchased land
sold for nonpayment of the taxes for a certain year could not sell the
land again for nonpayment of subsequent taxes while it continued to
be the holder of such tax title.

An offer under G. L. (Ter. Ed.) c. 60, § 46, by the holder of a tax title
to surrender and discharge his deed is not rendered invalid by his
demanding an excessive sum therein.

Where an invalid tax title held by a city was assigned by it in October,
1936, under G. L. (Ter. Ed.) c. 60, § 52, as amended, and the assignee
paid one who was both treasurer and collector of taxes the total
amount of the unpaid taxes for several years, including taxes for the
years 1934 and 1935 which had not been certified by the collector to
be added to the tax title account under G. L. (Ter. Ed.) c. 60, §§ 50, 61,
as amended, and the amount of which was found to have been "re-
ceived as payment" thereof by the collector of taxes "and not as
part of the tax title account", the assignee, upon making an offer to
surrender and discharge under c. 60, § 46, as amended, was entitled
to receive from the city only the amount paid to it exclusive of the
amount of the two years' taxes.

Determination by the Land Court of the invalidity of a tax title held
by a municipality and assigned by it is not a prerequisite of an action
of contract by the assignee against the municipality under G. L.
(Ter. Ed.) c. 60, § 46, to recover the amount paid the defendant for
the tax title.

CONTRACT.    Writ in the Superior Court dated February
15, 1937.

The case was heard by *Walsh*, J., and in this court was
submitted on briefs.

*J. J. Ginnetti*, City Solicitor, for the defendant.

*D. W. Jacobs*, for the plaintiff.

Cox, J.    The plaintiff seeks to recover under the provi-
sions of G. L. (Ter. Ed.) c. 60, § 46, (see St. 1934, c. 131,
§ 1,) the sum paid by her to the defendant for the assign-
ment of an allegedly invalid tax title.    The case was tried

by a judge of the Superior Court sitting without jury, together with a bill in equity in which the parties are reversed, and is before this court on a report by him of his findings of fact and rulings of law, which are attached to the report.

One Osgood was both treasurer and tax collector of the city. In 1930, the assessors committed to him, as collector, a tax assessed for that year against one Michael G. Williams, on certain real estate in the city. On September 6, 1932, $224.78 of this tax remaining unpaid, Osgood, as collector, caused the land which was subject to the tax to be sold at public auction, and bought it in for the city. (G. L. [Ter. Ed.] c. 60, §§ 43, 48.) The title so acquired by the city is hereinafter referred to as the "1930 tax title." In 1931, a tax of $747.72 was assessed against Williams upon the same property, and in 1933, Osgood again caused the land subject to the tax to be sold at public auction to the city for the amount due on that tax. The title thereby purportedly transferred is hereinafter referred to as the "1931 tax title." A tax of $732.98, assessed in 1932 against Williams upon the same land remained unpaid, and in September, 1933, its amount was added to the 1931 tax title account. The tax of $633.24, for 1933, upon the same land, assessed either to Williams or to Julia J. Williams, remained unpaid, and in September, 1934, its amount was added to the 1931 tax title account.

Julia J. Williams became the record owner of the land in question prior to the 1934 tax assessment, and in 1935 she was succeeded as owner by one Jacobs who gave back to her a mortgage on the property. The taxes for 1934 and 1935, amounting respectively to $635.26 and $598.54, were assessed against Julia J. Williams. Neither of these taxes was ever added to either tax title account, as Jacobs was negotiating with Osgood and the assessors of the city relative to the possible abatement of back taxes. On October 5, 1936, these negotiations culminated in a letter to the assessors from the commissioner of corporations and taxation relative to the matter, and thereupon the assessors

notified Osgood that they approved the payment of "Tax Titles and Taxes" without interest, and with an abatement in the sum of $211.90 upon the 1935 tax. On October 5, 1936, Osgood notified Jacobs that the city "will assign, after the expiration of ten days, tax titles held by it on property assessed to you," in compliance with St. 1936, c. 392. On the same day Osgood "was notified title was to be taken in the name of . . . [Snow, but she] is not and was not the [record] owner, said Joseph Jacobs in the fall of 1936 having conveyed to Carrie Flaherty and Samuel Jacobs." On October 6, 1936, there was paid to Osgood, in behalf of or by Snow, the sum of $3,362.02; of this amount $224.78 was in consideration of his assignment to her of the 1930 tax title. Osgood's deed of assignment, as treasurer, to Snow of the 1931 tax title, dated October 16, 1936, recites, as its consideration, the sum of $3,137.24, which is the difference between the total amount paid by Snow to Osgood and the amount due on account of the 1930 tax title; and it represents the amount of the taxes revised by the assessors for the years 1931 to 1935, inclusive. When the deed of assignment was delivered, separate receipts, evidencing the payment of the taxes for the last two years, totalling $1,021.90, were given to Jacobs by Osgood as collector. The inclusion of the amount of the 1934 and 1935 taxes in the sum recited in the assignment as its consideration was at the suggestion of Jacobs.

About January 15, 1937, Snow offered in writing under G. L. (Ter. Ed.) c. 60, § 46, as amended by St. 1934, c. 131, § 1, to "surrender and discharge the tax deed, dated July 14, 1933, [1931 tax title] . . . and transfer to the city . . . all my right, title and interest in the premises as you shall elect. I to thereupon receive therefor the sum of $3,137.24, being the amount which I paid . . . ." She gave as her reason that the 1931 tax title was invalid, the prior sale for taxes which resulted in the 1930 tax title. At a conference between Osgood, Snow and her attorney on February 10, 1937, the former said he would "return all the money if all the papers were received," whereupon the attorney said the "first [1930] tax title could not be given

back as it had already been redeemed by the Land Court." No record of any proceeding in the Land Court was in evidence. Snow seeks to recover $3,137.24, together with interest allowed by the statute. G. L. (Ter. Ed.) c. 60, § 52, as amended by St. 1936, c. 392, § 1, provides, among other things, that the treasurer of any city or town holding a tax title, upon payment to the city or town of a sum not less than the amount necessary for redemption, may assign and transfer such tax title to any person, and that except as otherwise provided, "all provisions of law applicable in cases where the original purchaser at a tax sale is another than the city or town shall thereafter apply in the case of such an assignment, as if the assignee had been a purchaser for the original sum at the original sale or at a sale made at the time of the taking and had paid to the city or town the subsequent taxes and charges included in the sum paid for the assignment . . . ."

The trial judge found that "The amount included in the total sum paid as taxes for the years 1934 and 1935, namely . . . ($1,021.90), although received by said Osgood at the time the assignment was executed . . . was received as payment of the taxes for those years, and not as part of the tax title account so called, and must be accounted for by said Osgood as collector of taxes . . . that the taxes for 1934 and 1935 were not added to the tax title account, and plaintiff is not entitled to have the sums paid on account of these taxes repaid." He found that the tax sale of July 14, 1933 (the 1931 tax title sale) was an invalid sale, and that the notice delivered to Osgood on January 15, 1937, was a good and sufficient notice under the statute. (G. L. [Ter. Ed.] c. 60, § 46, as amended.) He found for Snow in the sum of $2,115.34, "with interest thereon from January 15, 1937," and reported the case upon the stipulation that, if the findings and rulings and refusals to rule are correct, judgment is to be entered on the finding, otherwise the finding is to be set aside and such judgment entered as law and justice require.

The general and special findings of the judge must stand if supported by the evidence and the legitimate inferences

which might have been drawn therefrom. The general finding is conclusive if there is any evidence to support it. *Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328, 331. The trial judge was right in ruling that the 1931 tax title was invalid because of the 1930 tax title. *Landers* v. *Boston*, 267 Mass. 17. *Boston* v. *Jenney*, 282 Mass. 168. See G. L. (Ter. Ed.) c. 60, § 61, as amended.

The city contends that the demand by Snow of the sum of $3,137.24 in the notice required by G. L. (Ter. Ed.) c. 60, § 46, as amended, made the offer invalid. We may assume that this notice must be in conformity with that section. *Williams* v. *Baker*, 209 Mass. 92. *Byrne* v. *Sharon*, 251 Mass. 472. There is no requirement, however, that any sum shall be demanded or mentioned. The only reference to the matter of reimbursement is that "the town shall pay to the purchaser the amount which he paid . . . ." We think the judge was right in ruling that the notice was sufficient.

Snow contends that the finding of the trial judge should have included the amounts of the taxes as adjusted for the years 1934 and 1935, that is, $1,021.90. She argues that it must be presumed that the tax collector performed his duty in collecting the tax by adding the unpaid 1934 and 1935 taxes to the tax title account, and relies upon so much of § 50 of c. 60 as provides that, if the town becomes the purchaser, there shall be set up on the books of the town, a separate account of each parcel of land covered by any tax deed or instrument, to which "shall be charged the amount . . . [of] all uncollected taxes assessed to such parcel for any year subsequent to that for the taxes for which such parcel was purchased or taken . . . ." The provisions, however, of St. 1933, c. 325, § 6, and St. 1935, c. 414, § 1, which amended this section, have been overlooked. The statute as amended provides, among other things, that there "shall be charged . . . upon certification in accordance with section sixty-one, all uncollected taxes assessed to such parcel for any year subsequent to that for the taxes for which such parcel was purchased or taken, with all legal costs and charges" thereon, including interest

accrued up to the date of such certification. Section 61 as amended by St. 1933, c. 325, § 9, and St. 1934, c. 48, (see St. 1936, c. 93, § 1,) provides, among other things, that when the town is the purchaser, the collector shall certify to the treasurer not later than September first of the year following that of their assessment all subsequent taxes which become part of the terms of redemption; and the treasurer shall give him a certificate stating that the amount or amounts have been added to the tax title account or accounts and the collector shall be credited as if the tax had been paid in money. This section also provides that on redemption, the subsequent taxes, costs and interest shall be paid to the town as a part of the terms of redemption, "except that if any of the said subsequent taxes have not been certified . . . then redemption may be made by payment only of the amount of the tax for which the estate was purchased or taken and of such subsequent taxes as shall have been so certified, together with costs and interest." There is nothing in the record to show that the certification of the taxes for 1934 and 1935, as required by § 61, as amended, was ever made, and we think there was no error. The basis of Snow's claim is that the tax title of 1931 is invalid. The only amount which she is entitled to recover is what she paid, with interest, as has already been said. It may be open to serious question whether the provisions of c. 60, relating to the charging of subsequent taxes after a tax sale to a city, are intended to apply in the case of invalid tax sales. Compare *Smith* v. *Smith*, 150 Mass. 73.

The trial judge, by implication at least, found that the tax sale of 1930 was valid. The city contends that the burden was upon Snow to show that the tax title assigned to her by the city is invalid "by a decision of the Land Court before any finding can be made in this action for . . . [her]," citing *Landers* v. *Boston*, 267 Mass. 17, where it is said, page 22, ". . . and the [collector's] deed received is *prima facie* valid until its invalidity is established in the Land Court at a hearing to foreclose the right of redemption under G. L. c. 60, §§ 68 and 70." The case of

*Landers* v. *Boston*, however, was not concerned with any proceeding under § 46, and the quoted portion of the opinion related to proceedings in the Land Court under §§ 64 to 75, inclusive, for the foreclosure of rights of redemption under tax title, as to which proceeding at that time the Land Court had exclusive jurisdiction. By § 82, the collector himself may, without the intervention of any court, in effect declare a tax title invalid. Sections 37 and 84A relate to adjudications of the invalidity of the tax title by a "court of competent jurisdiction." Under § 65 a petition for the foreclosure of all rights of redemption under a tax title cannot be instituted until two years after the tax sale. By § 46 the purchaser at a tax sale may, within six months after the date of his deed, offer to surrender and discharge his deed, and thereby put himself in a position to receive from the town the amount which he paid. It cannot have been intended that a purchaser, proceeding under § 46, must suspend for two years and then bring a petition in the Land Court to foreclose the right of redemption which he does not wish, and in that proceeding seek to have his tax title declared invalid. Furthermore, § 46 provides that the offer which the purchaser must make shall contain a specific statement of the reason why the holder has no claim on the land sold, with the evidence on which he relies, and, if such evidence consists of any public record or of facts shown therein, such offer shall contain a specific reference thereto. The Superior Court had jurisdiction of the case.

There was evidence which warranted the finding of the trial judge that this amount of $1,021.90 was received as payment of the taxes for the years 1934 and 1935, and not as a part of the tax title account, and his finding cannot be disturbed. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

We have considered all the points which were argued. In accordance with the terms of the report, judgment is to be entered on the finding.

*So ordered.*