CITY OF CHICOPEE *vs.* MANSET REALTY CORPORATION &
another.

Hampden.     January 10, 1946. — April 16, 1946.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Taxation*, Real estate tax: lien, demand, certification, interest, taking.
*Interest.*

The lien for a tax assessed upon real estate in 1932 continued although
a sale in 1933 for nonpayment of that tax and a duly recorded collec-
tor's deed following the sale were adjudicated invalid solely because of
insufficient descriptions of the premises in the notice of the sale and
in the deed.

Under G. L. (Ter. Ed.) c. 60, §§ 37, 61, as amended, the liens for taxes
for 1933 and 1936, inclusive, on a parcel of real estate, which had
been certified and added to a tax title account established after the
city in 1933 had received a tax deed following a sale for nonpayment
of the 1932 tax, were not extinguished where in 1940 there was a
recorded alienation of the property and in 1942 the 1933 tax deed was
adjudicated invalid for want of a sufficient description of the property
in the notice of the 1933 sale and in the deed, and the tax collector
recorded a disclaimer of the tax title; and a tax title later acquired
by the city by a taking for nonpayment of the taxes for 1932 to 1940,
inclusive, was valid.

A demand upon the taxpayer is not necessary for a valid certification of
a tax for addition to a tax title account under G. L. (Ter. Ed.) c. 60,
§ 61, as amended.

Authority for a requirement of a demand upon a taxpayer as a condition
precedent to a valid certification of a tax for addition to a tax title
account under G. L. (Ter. Ed.) c. 60, § 61, as amended, not provided
by statute, cannot be supplied through a form approved by the tax
commissioner under § 105 as amended.

A demand for payment of a real estate tax was properly made to the one
who had owned the real estate in the year of assessment, although he
was no longer the owner at the time of making the demand.

Upon a taking of real estate for nonpayment of taxes for 1932 to 1940,
inclusive, after a purported tax title had been acquired by deed follow-
ing a sale for nonpayment of the 1932 tax and the taxes for the follow-
ing years had been certified and added to the tax title account but the
purported tax title had been adjudged invalid for insufficient description
of the property in the notice of the sale and in the deed and had been
disclaimed, the taxpayer was chargeable with interest on the taxes

from the time they respectively became due up to the date of the taking even though an interest item had been omitted from the tax title account.

A notice of intention to take land for nonpayment of a tax thereon and the instrument of taking were not defective in that they did not refer to an earlier tax title which had been acquired for nonpayment of the same tax but had been adjudicated invalid and disclaimed.

PETITIONS, filed in the Land Court on May 22, 1944.

The cases were heard by *Cotton*, J.

Among exceptions saved by the respondents respecting the questions dealt with in the opinion on page 442, were exceptions to the refusal of requests as follows: "26. The lien or liens contemplated by the extraordinary ninety-day provisions of Gen. Laws, c. 60, § 37, and any amendments thereto, in connection with taxes added or certified to tax title accounts under c. 60, § 61, do not include interest on such taxes from the original accrual dates to the time of the relevy within the ninety-day period." "29. On all the evidence, a finding must be made that the takings on which this petition is based are invalid because of the attempt to include interest on the 1932 taxes from the original accrual date up to the time of the said takings." The respondents further excepted to the refusal of requests in substance that on "all the evidence, a finding must be made that the takings on which this petition is based are invalid because of the attempt to include," severally, amounts as interest on the 1932–1940, inclusive, taxes "from the original accrual dates up to the time of the said takings"; and that on "all the evidence, a finding must be made that the interest in the takings at bar covers such periods of time for which interest was not allowable that the takings are invalid"; and that "a finding must be made that there are improper amounts of interest in the takings on which this petition is based, in amounts so great that the errors are substantial."

*L. A. Stone*, (*R. J. Rosa* with him,) for the respondents.

*N. J. Vigeant*, (*W. M. Shea*, City Solicitor, with him,) for the petitioner.

*S. S. Dennis*, by leave of court, submitted a brief as amicus curiae.

RONAN, J.   These are five petitions filed in the Land Court by the city of Chicopee under G. L. (Ter. Ed.) c. 60, § 65, as amended by St. 1933, c. 325, § 12, and St. 1938, c. 305, to foreclose all rights of redemption under tax titles acquired by the city on May 2, 1942, to five parcels of land for the nonpayment of taxes assessed in the years 1932 to 1940, inclusive.   The judge found that these tax titles were valid, and at the request of the respondents ordered the petitions to stand for further hearing on the question of redemption.   The respondents have appealed from the decision of the judge sustaining the validity of the tax titles, and have also excepted to certain rulings on evidence and upon requests for rulings.

As the bill of exceptions includes not only the same questions raised by the appeal but also the rulings on evidence and on the requests, *Harrington* v. *Anderson,* 316 Mass. 187, 193, we shall dismiss the appeal and consider the exceptions. *Worcester* v. *Bennett,* 310 Mass. 400.

There is little dispute as to the material facts.   These five parcels of land were owned by Clarence E. Day prior to 1932 and continuously thereafter until he conveyed them on March 28, 1933, to the C. E. Day Lumber Co., which conveyed them on December 31, 1940, to the Manset Realty Corporation.   This last corporation transferred them on August 22, 1944, to the Hampden County Realty, Inc., the present owner.   The city acquired tax title to these premises in 1933 for the nonpayment of the taxes for 1932.   The city in 1940 filed a foreclosure petition in the Land Court based upon the 1933 tax deeds and covering these same five parcels. The judge found that the notices of sale and the 1933 tax deeds did not contain a sufficient description of the parcels, and as a result that petition was dismissed on February 6, 1942.   When this decision was made the taxes assessed for the years 1933 to 1940, inclusive, had been certified for addition to and were added to the tax title accounts set up pursuant to G. L. (Ter. Ed.) c. 60, § 50, as amended.   The tax collector of the city on March 27, 1942, recorded disclaimers of the 1933 tax titles.   G. L. (Ter. Ed.) c. 60, § 84, as appearing in St. 1935, c. 260.   Demands were made on

March 30, 1942, on Gertrude G. Day, "heir" of Clarence E. Day, for payment of the 1932 taxes, and on the C. E. Day Lumber Co. for payment of the taxes for 1933 to 1940, inclusive. Copies of these demands were mailed to the Manset Realty Corporation, the then record owner of these premises. After notice by posting and publication, the premises were taken by the city on May 2, 1942, for the nonpayment of the taxes for the years 1932 to 1940, inclusive, and the instruments of taking were recorded on May 4, 1942.

The principal contention of the respondents is that the recorded alienation of these five parcels in 1940 extinguished the liens for taxes for 1933 to 1936, inclusive, because, as they say, there was no provision for the continuance of tax liens for taxes certified in a tax title account where the tax title was invalid until a provision therefor was made on March 23, 1936, the effective date of St. 1936, c. 146, amending G. L. (Ter. Ed.) c. 60, § 37, and because prior to this statute there was no provision for a continuance of the liens for the years just mentioned after the filing of disclaimers of the 1933 tax titles.

The creation of a lien as security for the payment of taxes assessed upon real estate has been for many years one of the methods used for the collection of the tax. The legislative history of statutes creating a lien for the tax on real estate is set forth in *Curtiss v. Sheffield*, 213 Mass. 239. See *Shruhan* v. *Revere*, 298 Mass. 12; *Massachusetts Hospital Life Ins. Co.* v. *Shulman*, 299 Mass. 312; *Boston* v. *Quincy Market Cold Storage & Warehouse Co.* 312 Mass. 638. We need not repeat what was said in those decisions as to the origin, nature or duration of a tax lien, because in determining whether the tax liens for the years 1933 to 1936, inclusive, existed on May 2, 1942, at the time of the taking by the city, we need only to examine the pertinent statutes in effect at the time these taxes were assessed.

The statute providing that taxes shall be a lien upon the real estate assessed is G. L. (Ter. Ed.) c. 60, § 37. The form in which this statute stood in 1932 and also its form

in 1942 at the time of the takings are shown in the footnote. [1]
The two important amendments to § 37 were effected by
St. 1933, c. 325, § 1, which inserted the first group of itali-
cized words and lengthened the period for recording tax
deeds from thirty to sixty days, and by St. 1936, c. 146,
inserting the second group of italicized words. [2]

There can be no question that the deeds for the 1932
taxes were executed while the liens for those taxes existed
and that they were duly recorded in 1933, all in accordance
with G. L. (Ter Ed.) c. 60, § 37, as amended. These 1933
tax deeds were later adjudicated to be invalid because the
notices of sale and the deeds did not sufficiently describe
the premises assessed. This was a question of fact which
arose when the deeds were applied to the parcels they pur-

---

[1] "Taxes assessed upon land, including those assessed under sections
twelve, thirteen and fourteen of chapter fifty-nine, shall with all incidental
charges and fees be a lien thereon from January first in the year of assess-
ment. *Except as provided in section sixty-one,* such lien shall terminate at the
expiration of two years from October first in said year, if the estate has in
the meantime been alienated and the instrument alienating the same has
been recorded, otherwise it shall continue until a recorded alienation thereof;
but if while such lien is in force a tax sale or taking has been made, and the
deed or instrument of taking has been duly recorded within sixty days, but
the sale or taking is invalid by reason of any error or irregularity in the pro-
ceedings subsequent to the assessment, the lien *and also the lien or liens for
any subsequent taxes or charges which have been added to the tax title account
under authority of section sixty-one* shall continue for ninety days after a sur-
render and discharge under section forty-six or a release, notice or disclaimer
under sections eighty-two to eighty-four, inclusive, has been duly recorded,
or for ninety days after the sale or taking has been finally adjudged invalid
by a court of competent jurisdiction, and if while a lien established by this
section is in force the owner of the real estate on which it attaches is adjudi-
cated bankrupt, the lien shall continue for six months after final termination
of the bankruptcy proceedings, subject, however, to any lawful action under
any paramount authority conferred by the bankruptcy laws of the United
States. Said taxes, if unpaid for fourteen days after demand therefor, may,
with said charges and fees, be levied by sale of the real estate, if the lien or
liens thereon have not terminated. No tax title and no item included in a
tax title account shall be held to be invalid by reason of any error or irregu-
larity which is neither substantial nor misleading, whether such error or
irregularity occurs in the proceedings of the collector or the assessors or in
the proceedings of any other official or officials charged with duties in con-
nection with the establishment of such tax title or the inclusion of such item
in the tax title account." (Italics ours.)

[1] The statute since 1932 was also amended by St. 1933, c. 254, § 53, chang-
ing the date on which tax liens attach from April first in the year of assessment
to January first in such year; by St. 1934, c. 131, § 2, inserting the words
"a surrender and discharge under section forty-six or"; by St. 1934, c. 169,
eliminating the statement that there shall be no lien for reassessed taxes in
the event of an alienation before the reassessment; by St. 1935, c. 269, in-
serting the provision applicable in case of bankruptcy of the owner; and by
St. 1941, c. 84, revising the last sentence. See now St. 1943, c. 478, § 1.

ported to describe. *Springfield* v. *Arcade Malleable Iron Co.* 285 Mass. 154. *Quincy* v. *Wilson*, 305 Mass. 229, 230, 231. *Franklin* v. *Metcalfe*, 307 Mass. 386. These 1933 tax deeds were not void upon the ground that they had not been properly recorded, as was the case in *Boston* v. *De Grasse*, 317 Mass. 523, and *Newton* v. *Noone, ante*, 374. A duly recorded tax deed is prima facie evidence of all facts essential to the validity of the title thereby conveyed. It presumptively vests a good title. G. L. (Ter. Ed.) c. 60, § 45, as amended. The liens for the 1932 taxes existed when the second takings occurred on May 2, 1942. Our inquiry is whether the liens for the taxes for 1933 to 1936, inclusive, were then in existence.

The duration of the liens for the taxes assessed for these four years is governed by G. L. (Ter. Ed.) c. 60, § 61, which provided that "Whenever a town shall have purchased or taken real estate for payment of taxes the lien of the town on such real estate for all taxes assessed subsequently to the assessment for payment of which the estate was purchased or taken shall continue"; and that it was not necessary for the municipality to take or sell the real estate for the non-payment of these subsequent taxes, but that all such taxes, costs and interest should be paid to the municipality as a part of the terms of redemption. The amendments to § 61 by St. 1933, c. 325, § 9, and St. 1934, c. 48, in so far as they were in effect at the time the assessments were made for some of the four years in question, did not limit the life of the liens. By the express terms of § 61 the city had liens upon the real estate for the payment of these subsequent taxes. The city, however, could not sell the premises for the nonpayment of any one of these subsequent taxes. *Chadwick* v. *Cambridge*, 230 Mass. 580. *Landers* v. *Boston*, 267 Mass. 17. *Boston* v. *Jenney*, 282 Mass. 168. This section did not fix the duration of these liens. *Hayden* v. *Foster*, 13 Pick. 492. General Laws (Ter. Ed.) c. 60, § 37, fixed the time for the termination of a lien for taxes as two years from October 1 of the year of assessment if in the meanwhile there had been a recorded alienation of the property taxed; otherwise the lien continued until a recorded

alienation occurred, but such alienation did not terminate the original lien in certain cases where the sale or taking under this original lien was invalid. But this section, § 37, in the present circumstances, did not then limit the liens for the four tax years in question. The amendment of § 37 by St. 1933, c. 325, § 1, which inserted the words "Except as provided in section sixty-one" so that § 37 then read, "Except as provided in section sixty-one, such lien shall terminate . . . ," shows that the liens for the taxes assessed subsequently to the tax for which a purchase or taking by the city was made were not intended to be limited in duration by § 37. We need not decide precisely how long the liens created by § 61 for the taxes for these four years were to continue, but we think that they were to continue at least as long as did the liens for which the land was taken or purchased. The liens for the taxes subsequently assessed for the years 1933 to 1936, inclusive, were in existence by virtue of G. L. (Ter. Ed.) c. 60, § 61, when G. L. (Ter. Ed.) c. 60, § 37, was amended by St. 1936, c. 146, providing that the liens for subsequent taxes which have been added to the tax title account should continue for the same period of time as did the lien for which the premises had been taken or sold where the instrument of sale or taking had been recorded within a certain time but where the sale or taking was invalid by reason of some error or irregularity subsequent to the assessment. This amendment, when applied to the situation arising from the invalid 1933 tax titles on account of an inaccurate description in the notices of sale and tax deeds, merely fixed the time for the expiration of the liens for the taxes assessed for the four years in question. There was no error in the ruling that "sections 37 and 61 together as applied to a situation such as we have in the case at bar, give a city an opportunity, as was done in this case, to collect, and make another sale for, the taxes for 1932 to 1940, inclusive."

We do not agree with the contention of the respondents that, prior to the amendment of § 37 by St. 1936, c. 146, the liens for taxes assessed subsequently to the tax for which a sale or purchase was made do not continue after the tax

title has been held to be invalid. The continuance of the liens for these subsequently assessed taxes, as provided for in G. L. (Ter. Ed.) c. 60, § 61, does not in terms or by fair implication depend upon the invalidity of the tax title where the instrument of sale or taking has been duly recorded within the prescribed time and the invalidity arises from an inaccurate description of the premises. We have no right to read into the section a provision that the continuance of the liens for the four years in question depends upon the proper description of the premises in the instruments of taking or sale. *King* v. *Viscoloid Co.* 219 Mass. 420, 425. *Morse* v. *Boston,* 253 Mass. 247, 252. *Mitchell* v. *Mitchell,* 312 Mass. 154, 161.

A demand upon the taxpayer is not a condition precedent to a valid certification of a tax. The statute, G. L. (Ter. Ed.) c. 60, § 61, as appearing in St. 1933, c. 325, § 9, and amended, providing for the certification of a tax, makes no mention of a demand. The respondents point out that there is a space marked "costs" in the certification blank, which is in the form approved by the commissioner of corporations and taxation, in which the costs for a demand may be inserted, and thereby argue that a demand is necessary. The lack of statutory authority requiring the making of a demand cannot be supplied by providing for such in a form approved by the commissioner, *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, even if we assume that certification is a proceeding for the collection of taxes — compare *Boston Five Cents Savings Bank* v. *Boston,* 318 Mass. 183 — and that by G. L. (Ter. Ed.) c. 60, § 105, a duty to prescribe or approve the forms is imposed upon the commissioner.

The taxes for 1932 were properly assessed to Clarence E. Day, and those for the years 1933 to 1940, inclusive, were properly assessed to the lumber company. The demands in 1942 on Gertrude G. Day, "heir" of Clarence E. Day, for the payment of the 1932 taxes and on the lumber company for the taxes in the subsequent years were sufficient even if the premises at the time of these demands were owned by the Manset Realty Corporation to whom copies of the

demands were mailed. The demands made on Day and the lumber company complied with the statute. G. L. (Ter. Ed.) c. 60, § 16. *Boston* v. *Lynch,* 304 Mass. 272, 275–276.

The respondents were not charged with the costs of the invalid 1933 tax titles which they contend should have been included in the demands for payment of the taxes, but they point to no statute requiring these costs to be included in the demands. We know no reason why these costs should be so included.

The respondents contend that they should not have been charged, as they were, for the interest on the taxes from the time they became due up to the date of the takings, or that at most they should be charged only with the amounts in the tax title accounts. The liability for interest is fixed by statute. The respondents were liable for "the amount of the tax for which the estate was purchased or taken and of such subsequent taxes as shall have been so certified, together with costs and interest." G. L. (Ter. Ed.) c. 60, § 61, as amended. The amount to be determined by the judge in permitting redemption includes interest at certain rates upon the amount of the original tax and costs and all subsequent taxes, costs and interest. G. L. (Ter. Ed.) c. 60, § 68, as amended. See also G. L. (Ter. Ed.) c. 60, § 62, as amended. By G. L. (Ter. Ed.) c. 59, § 57, as amended, liability for the tax carries with it liability for interest for "In all cases where interest is payable it shall be added to and become a part of the tax." The judge found that "the 1933 to 1941, inclusive, taxes were added to the tax title accounts set up on the 1933 tax deeds." Even if items for some of the interest did not appear on the tax title accounts, the respondents did not file any specifications challenging the correctness of these accounts. Indeed, the respondents stated during the trial that they did not question the validity of the tax title accounts. Furthermore, counsel conceded that the amount of interest included in the taxes for which the takings were made was correctly computed. In these circumstances, the omission of an item for interest in a tax title account does not exempt the respondents from liability for the proper amount

of interest.   We think this follows from the nature and effect to be given to the certification of a tax, *Boston* v. *Barry*, 315 Mass. 572, and from the further fact that the judge of the Land Court computes anew the amount due when fixing the terms of redemption.   G. L. (Ter. Ed.) c. 60, § 68, as amended.   There was no error in the finding "that interest sufficient to satisfy the requirement of the statute was included," nor in the ruling "that interest was properly included under the provisions of c. 60."

The notices and the instruments of taking were not defective because they did not refer to the prior tax titles. These notices and instruments complied with the forms prescribed by the Legislature, G. L. (Ter. Ed.) c. 60, § 105, Forms 13 and 14, and with the forms approved by the commissioner of corporations and taxation when said § 105 was amended by St. 1933, c. 168, § 3.   Neither before nor after this amendment did any prescribed or approved form contain any mention of any previous tax title.   *Charland* v. *Home for Aged Women*, 204 Mass. 563, 569.

The judge found that there was no defect that made the tax titles invalid, and that there was no irregularity in the acts of the collector that was either substantial or misleading or would warrant setting aside the tax titles.   See G. L. (Ter. Ed.) c. 60, § 37.   See also *Fall River* v. *Conanicut Mills*, 294 Mass. 98; *Lenox* v. *Oglesby*, 311 Mass. 269, 275.

Most, if not all, of the questions raised by the respondents have been covered by what has already been said.   We have examined the entire record and find no error.

*Appeal dismissed.*
*Exceptions overruled.*