GUARANTY MORTGAGE CORPORATION & others vs.
TOWN OF BURLINGTON & others.

Middlesex. November 2, 1981. — March 2, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation,* Real estate tax: foreclosure of tax title, redemption, low value
    land. *Notice. Due Process of Law,* Notice.

A mortgagee of real property had no right under G. L. c. 60, § 79, to ac-
    tual notice of a determination by the Commissioner of Revenue to
    treat the property as low-value land for purposes of a sale for nonpay-
    ment of taxes. [415-416]
A sale of low-value land for nonpayment of taxes was fully regulated by
    G. L. c. 60, § 79, and therefore a mortgagee of such land acquired no
    additional right to actual notice of the sale by virtue of language in a
    State tax form, prescribed by the Commissioner of Revenue under stat-
    utory authority, purporting to require such notice. [416-417]
Provisions of G. L. c. 60, § 80A, which, with respect to sales of real estate
    for nonpayment of taxes, cut off redemption rights of any person
    "upon whom service of the notice of sale . . . has been made by regis-
    tered mail," afforded no rights to the mortgagee of low-value land sold
    under G. L. c. 60, § 79, which gives no right to such notice. [417-418]
Notice of a proposed tax sale of low-value land, which complied with
    G. L. c. 60, § 79, was not required to contain a description of the land
    under provisions of G. L. c. 60, § 40, applicable to judicially super-
    vised sales. [418]
The notice provisions of G. L. c. 60, § 79, applicable to a proposed tax
    sale of low-value land, satisfy the requirements of the due process
    clause of the Fourteenth Amendment to the United States Constitution
    and art. 10 of the Massachusetts Declaration of Rights. [418-420]

BILL IN EQUITY filed in the Superior Court on January 31,
1974.
On transfer to the Land Court the case was heard by *Fen-
ton,* J., on a motion for summary judgment.
The Supreme Judicial Court granted a request for direct
appellate review.

*Joel M. Sowalsky* for the plaintiffs.

*William A. Zucker* (*Harry J. Myers, Jr.*, with him) for Murray Hills & another.

*Judith S. Yogman*, Assistant Attorney General, for Commissioner of Revenue.

*David Berman*, Town Counsel, for town of Burlington, submitted a brief.

NOLAN, J.   Guaranty Mortgage Corporation (Guaranty), the holder of a first mortgage on certain lots of land in Burlington, filed a complaint in the Superior Court[1] challenging the legality of the sale of those lots for nonpayment of taxes. Guaranty requested declaratory relief under G. L. c. 231A, § 1.   Subsequently added as plaintiffs were Stanley Reich, trustee of the Massachusetts Realty Trust and owner of the lots prior to the tax sale, and State Street Bank & Trust Co. (State Street), the assignee of Guaranty's mortgage.   The defendants are the town of Burlington, the Commissioner of Revenue[2] (Commissioner), Murray Hills, Incorporated (Murray Hills), and Robert M. McGinness, the latter two defendants being the purchasers of the subject lots at the tax sales.   After all parties filed motions for summary judgment, Mass. R. Civ. P. 56 (a), (b), 365 Mass. 824 (1974), a judge of the Land Court made findings of fact and conclusions of law, and judgment was entered for the defendants.   There was no error.

We learn from the judge's findings, which were based in large measure on a stipulation of facts which all parties joined, that McGinness and Murray Hills purchased all the lots which are the subject of this litigation at a public auction conducted by the town treasurer of Burlington on January 14, 1974.[3]   Prior to the sale, the treasurer mailed copies

---

[1] The case was later transferred to the Land Court on motion of the defendants acting under G. L. c. 212, § 26A.

[2] The complaint listed as a defendant the Commissioner of Corporations and Taxation.   The Commissioner of Revenue is the statutory successor to the Commissioner of Corporations and Taxation.   St. 1978, c. 514, § 278.

[3] Murray Hills purchased all the lots in question except lot 56, Glen Cove Park, which was purchased by McGinness.

of the notice of sale (set forth in the margin) to Hart Proper-
ties, Inc. (Hart), and to Parson Realty Trust (Parson), who
were the owners of record of the lots as of January 1, 1973.[4]
This notice was published in a local newspaper, the Burling-
ton Times-Union, and was posted in a convenient and
public place in Burlington. The publication, mailing, and
posting were all done in order to comply with G. L. c. 60,
§ 79. The real estate taxes for all lots for the years 1969
through 1973 remained unpaid through January 14, 1974.

The property in question consists of "lot 45," shown on a
plan entitled "Woodhill Manor, Section 3 in Burlington,
Mass.," and thirty-three acres of land subdivided into lots,
most of which are shown on a plan entitled "Glen Cove
Park in Burlington, Mass." A convenient starting date is
August 8, 1968, when Hart gave to Guaranty a mortgage
covering property which included lot 45. This mortgage
was recorded and then assigned to State Street by an instru-
ment dated August 8, 1969. However, the assignment was
not recorded until September 10, 1975. By a deed dated
August 19, 1969, McLaughlin Realty Trust (McLaughlin)
conveyed the thirty-three acres to Guaranty. The deed was
recorded on August 21, 1969. Guaranty conveyed the
thirty-three acres to Parson by deed dated August 19, 1969,
and recorded on August 21, 1969. Parson gave a mortgage
to Guaranty of the thirty-three acres on August 19, 1969,
and this mortgage was recorded on August 21, 1969. The
mortgage was assigned to State Street on August 22, 1969,
but the assignment was not recorded until September 10,
1975. Reich acquired title to the thirty-three acres by deed
from Parson dated and recorded on March 30, 1973, and he

---

[4]"NOTICE IS HEREBY GIVEN THAT on January 14, 1974, at 9:30 A.M., at
Town Treasurer's Office, pursuant to the provisions of General Laws,
Chapter 60, Sections 79 to 80B, inclusive, and by virtue of the recording
on November 26, 1973, of an affidavit of a finding by the Commissioner
of Corporations and Taxation, with Middlesex South District Registry of
Deeds, as Instrument No. 221, I SHALL OFFER FOR SALE AT PUBLIC AUCTION,
severally or together, certain parcels of land of low value listed in said af-
fidavit, said parcels having been taken or purchased by the Town of Bur-
lington for nonpayment of the taxes due thereon."

acquired title to lot 45 from Hart by deed dated March 30, 1973, and recorded on December 24, 1973.

On September 19, 1969, the tax collector for the town of Burlington mailed the 1969 tax bill for lot 45 to Hart, the owner.  Hart received it.  On the same date, the collector mailed the 1969 tax bill for the thirty-three acres to Mc-Laughlin, who received it.  McLaughlin had conveyed title to Guaranty one month earlier, but, as of January 1, 1969, the property stood in the name of McLaughlin.  The collector made demand on Hart and on McLaughlin for payment on February 11, 1970, and on September 2, 1971, published a notice of intention to take all these lots.  The notices were posted in two or more convenient and public places in Burlington.  On September 17, 1971, the collector made takings of the thirty-three acres and lot 45, and the takings were recorded on November 9, 1971.

Hart and Parson owned all the lots as of the date of the receipt of the tax bills on or about September 19, 1969, though the bills were mailed to Hart and McLaughlin.  Demand for payment was made on Hart and McLaughlin on February 11, 1970.  Guaranty did not take advantage of the statutory option to be notified of the demand for payment of the taxes provided in G. L. c. 60, §§ 38, 39,[5] set forth in full in the margin.

---

[5] General Laws c. 60, § 38, as appearing in St. 1933, c. 325, § 2, provides:  "If a mortgagee of land situated in the place of his residence, before July first of the year in which the tax is assessed, gives written notice to the collector that he holds a mortgage on land, with a description of the land, the demand for payment shall be made on the mortgagee instead of the mortgagor."

General Laws c. 60, § 39, as appearing in St. 1933, c. 325, § 3, provides:  "If a mortgagee or an owner of land causes a notice, designating a place in the town where such land lies at which all papers relative to taxes on such land which are to be served on him may be left, to be recorded in January of any year in the office of the clerk of such town and, during said month, to be delivered to the collector thereof, the collector shall serve at such place any notice, demand for payment or other paper relating to the taxes on such land which is to be served by him.  The collector shall not advertise the sale of such land for two months after the time of a demand so made."

On November 12, 1973, the Commissioner made an affidavit under G. L. c. 60, § 79, that the value of lot 45 and each of the lots in the thirty-three acres was not more than $2,500 and that each lot was of insufficient value to meet taxes, interest and charges. The affidavit was recorded on November 26, 1973. The town of Burlington did not send written notice of the Commissioner's affidavit of low value to Guaranty, to Reich, or to State Street. After the public auction held on January 14, 1974, Guaranty offered the treasurer of Burlington a check for $12,426.39 for the purpose of redeeming the lots. The tender was refused.

The appeal presents four issues for resolution, and they will be addressed in the following paragraphs.

1. *Right to actual notice of the Commissioner's determination of low value.* There are two procedures for sale of land for nonpayment of taxes, one for the sale of land of low value (the procedure implicated in this case) and the other and more formal procedure of judicial foreclosure. The provisions of G. L. c. 60, § 79, as amended through St. 1979, c. 451, govern the sale of low value land and, in short, permit the Commissioner to make affidavit that "such parcels are of insufficient value to meet the taxes, interest and charges, . . . [and] that none of such parcels exceeds two thousand five hundred dollars in value . . . ." These sales are made without judicial supervision. *Bigham* v. *Commissioner of Corps. & Taxation,* 371 Mass. 270, 272 (1976). Procedure under low-value sale is more economical and expeditious than judicial foreclosure. *Johnson* v. *McMahon,* 344 Mass. 348, 353-354 (1962). Section 79 requires the Commissioner "upon written request . . . by any person in interest, [to] hear such person" on the matter of low-value determination. The plaintiffs argue that a right to be heard is valueless without a right to notice. However, to impose the burden of notice would destroy the purpose of the low-value sale procedure. The Legislature imposed only three conditions for the effective termination of the right to redeem under the low-value procedure: "(1) the issuance of the affidavit by the Commissioner, (2) the proper recording

of the affidavit, and (3) the posting of fourteen days' notice of the intended sale." *Johnson, supra* at 355. These conditions were met. The plaintiffs can demand no more. See *D'Olimpio* v. *Jancaterino*, 304 Mass. 200, 203-204 (1939).

As a second string to their bow, the plaintiffs invoke G. L. c. 30A, § 10. They argue that this statute entitles them to notice of the Commissioner's low-value determination. Their reliance is misplaced because § 10 requires a showing that the determination was an "adjudicatory proceeding." This classification is highly doubtful. However, even if we concede such a premise, § 10 remains unavailable because its last sentence bestows the right to a hearing only on those who request one. The plaintiffs have not made such a request.

Moreover, there is a safety valve in § 79 which permits a challenge to the Commissioner's low-value determination at any time prior to the sale of the land. *Bigham, supra* at 272. The valuation, per se, does not deprive the owner of any rights.

Finally, after the property has been sold, § 79 precludes any challenge of the accuracy of the Commissioner's determination of value. *Id.* at 273. The plaintiffs' challenge comes too late because the property had been sold by the time the plaintiffs commenced this action.

2. *Right to actual notice of the sale of the lots.* The plaintiffs continue their attack on § 79 by asserting a right to actual notice of the sale of the lots. Admittedly, § 79 gives no such right. The plaintiffs' attack is two-pronged. First, the language which appears at the top of State tax form 470A (notice of sale of low-value land) contains instructions to the taxing authority to send the notice by registered mail, return receipt requested, to any person having a right of redemption or any other interest in the land. Form 470A is a form prescribed by the Commissioner under G. L. c. 60, § 105. The plaintiffs argue that Burlington's noncompliance with the mailing directive preserves their right to redeem. This is error. The Commissioner's directive as to mailing does not have the effect of law. By approving a

form, the Commissioner may not expand a statutory duty of either a taxpayer or a city or town. See *Assessors of Quincy* v. *Boston Consol. Gas Co.*, 309 Mass. 60, 71 (1941); *Chicopee* v. *Manset Realty Corp.*, 319 Mass. 434, 441 (1946). The statutory requirements of § 79 have been met and these are sufficient. *Johnson, supra* at 355. The subject has been fully regulated by § 79 and therefore the Commissioner "cannot further regulate it by the adoption of a regulation which is repugnant to the statute." *Commonwealth* v. *Johnson Wholesale Perfume Co.*, 304 Mass. 452, 457 (1939).

For the second prong, the plaintiffs direct our attention to the language of G. L. c. 60, § 80A, inserted by St. 1941, c. 594, § 3. They argue that because § 80A cuts off redemption rights of any person "upon whom service of the notice of sale . . . has been made by registered mail," and who takes no action to redeem, it should follow that a right to redeem remain in one who has not received notice of sale by registered mail. The trial judge correctly perceived the non sequitur in this conclusion. If we adopted the plaintiffs' argument, we would for all practical purposes repeal § 79, which provides that "[t]itle taken pursuant to a sale under this section shall be absolute upon the recording of such deed of the treasurer." If the Legislature had intended to make the right to redeem dependent on the absence of notice, it could have said so. It has not done so.

The plaintiffs fare no better if we examine the equitable view of their position. Reich was on notice at the time he acquired title that the taxes were unpaid and that Burlington had taken the property. Guaranty could have invoked G. L. c. 60, §§ 38 & 39, and thereby received "any notice, demand for payment or other paper relating to the taxes on such land." G. L. c. 60, § 39. Cf. *Vee Jay Realty Trust Co.* v. *DiCroce*, 360 Mass. 751, 754 (1972). Guaranty could have required a tax escrow clause in its mortgage. Finally, and perhaps most importantly, the defendants are good faith purchasers and it would be inequitable to disturb their title. The plaintiffs receive no support from *West* v. *Selectmen of Yarmouth*, 345 Mass. 547 (1963), because there

the taxpayer had no notice of the unpaid taxes and title had not been transferred to a good faith purchaser but remained in the town.

3. *Adequacy of the notice of sale.* The plaintiffs challenge the adequacy of the notice of proposed sale. Section 79 requires the town treasurer to give "notice of the time and place of sale by publication fourteen days at least before the sale in a newspaper . . . and by posting a notice of the sale in some convenient and public place in the town." The plaintiffs seem to admit that Burlington has complied with those provisions. They argue, however, that the notice was nevertheless inadequate because it did not describe the property to be sold. Section 79 does not contain a requirement for a description. The notice given here, in addition to meeting the explicit requirements of § 79 quoted above, incorporates by reference the Commissioner's recorded affidavit of low value and furnishes the date, instrument number, and place of recording. The record is not clear as to how descriptive of the parcels the affidavit is. The plaintiffs urge this court to rule that the requirements for a description contained in G. L. c. 60, § 40, which applies to judicially-supervised tax sales, apply to foreclosures under § 79. Section 40 requires that the notice "contain a substantially accurate description of the several rights, lots or divisions of the land to be sold." The plaintiffs' argument fails to account for the differences that exist between a judicial tax sale and a low-value tax sale. It seems clear that the Legislature created two types of procedures, the one more demanding than the other. We see no reason to ignore such a reasonable dichotomy. The notice published in the present case met the requirements of § 79. It was unnecessary that the notice meet the requirements of § 40.

4. *Section 79 and due process.* The plaintiffs concede that the court upheld § 79 in the face of a constitutional attack in *Napier* v. *Springfield,* 304 Mass. 174, 178-181 (1939). However, they ask us to review *Napier* in the light of *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), in which the United States Supreme Court found

constitutionally inadequate a notice of a final judicial settlement of trust accounts by publication rather than by mail to those beneficiaries whose addresses were known. In at least two States, the application of *Mullane* to tax sales has resulted in a declaration that published notice is constitutionally inadequate. *Dow* v. *State*, 396 Mich. 192 (1976); *Montville* v. *Block 69, Lot 10*, 74 N.J. 1 (1977). However, both cases involved procedures more like our judicial foreclosure sales than the procedure for low-value land. Other jurisdictions which have faced the issue have upheld their statutes permitting notice by publication. See *Chesney* v. *Gresham*, 64 Cal. App. 3d 120 (1976), cert. denied, 432 U.S. 907 (1977); *Botens* v. *Aronauer*, 32 N.Y.2d 243, appeal dismissed, 414 U.S. 1059 (1973); *Christie-Stewart, Inc.* v. *Paschall*, 502 P.2d 1265 (Okla. 1972), vacated and remanded, 414 U.S. 100 (1973), aff'd on reconsideration, 544 P.2d 505 (Okla. 1974), cert. denied, 426 U.S. 935 (1976).

The leitmotif that runs through these cases which approve of notice by publication is that a taxpayer should know that the city or town will eventually sell his property if the taxes are not paid. As the New York Court of Appeals said in reference to *Mullane* and kindred cases: "In these cases (none of which is a tax sale case) indirect notice by either publication or posting was held invalid for the reason that the individuals had no reason to expect that their property interests were being affected. Such is not the situation in the case before us." *Botens, supra* at 249. Further, these cases recognize the need for an efficient procedure which will permit the city or town to sell its land taken for nonpayment of taxes. We see nothing in *Mullane* that signals a constitutional deficiency in our statute. It would place too great a burden on cities and towns to require them to examine the title to every parcel of low-value land on which taxes have not been paid immediately before taking steps to collect the taxes or to sell the land. *Mullane* recognizes the need for a dispensation from notice by mail when it vouchsafes that an interpretation "of the Due Process Clause which would place impossible or impractical obstacles in

the way could not be justified." *Mullane, supra* at 313-314. In sum, the dictates of due process under both the Fourteenth Amendment to the United States Constitution and art. 10 of the Declaration of Rights of the Massachusetts Constitution do not require us to strike down § 79.

5. *Conclusion.* There was no error in the trial judge's entry of summary judgment for the defendants.

*Judgment affirmed.*