RAYMOND W. JOHNSON & another vs. JAMES R.
McMAHON, JUNIOR, & others.

Barnstable.   February 7, 1962. — May 10, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

Taxation, Real estate tax: tax taking, foreclosure of tax title, sale of land
of low value.   Land Court, Findings by judge.   Equity Pleading and
Practice, Findings by judge.

A general finding "on all the evidence" by a judge of the Land Court in a
voluntary report of facts in a suit in equity in which the evidence was
not reported must be taken as true where the judge did not purport
to find all of the material facts or to base the general finding solely on
the subsidiary facts stated and such facts were not inconsistent with the
general finding.   [351]

In a suit in equity in the Land Court to invalidate a taking of land of the
plaintiffs in a town for nonpayment of real estate taxes, where the only
ground upon which the plaintiffs assailed the validity of the taking was
an alleged failure of the collector of taxes to comply with the demand
provisions of G. L. c. 60, § 16, a conclusive finding by the judge "that
the tax collector complied with the provisions" of § 16 required a deter-
mination that the title to the land vested in the town upon seasonable
recording of the instrument of taking.   [351–352]

In a proceeding in the Land Court by former owners of land in a town
against the town, the Commissioner of Corporations and Taxation, and
the grantee in a recorded deed of the land by the town treasurer follow-
ing its sale under G. L. c. 60, § 79, as land of low value, it was not open
to the plaintiffs to challenge the correctness of the Commissioner's opin-
ion of "insufficient value."   [353–356]

G. L. c. 60, § 79, if complied with, provides for a final and effective termi-
nation of redemption rights in land validly taken by a municipality for
nonpayment of taxes.   [356]

BILL IN EQUITY filed in the Land Court on December 3,
1959.

The suit was heard by McPartlin, J.

Joseph M. Cohen for the plaintiffs.

James E. Coppola for the defendant town of Bourne.

Anna Chopek, Assistant Attorney General (Lillian M.
D'Ambrosio with her), for Commissioner of Corporations
and Taxation.

Robert W. MacDonald for the defendant James R.
McMahon, Jr.

KIRK, J. The plaintiffs appeal from a decree entered in the Land Court dismissing their bill in equity. A parcel of land in the town of Bourne owned by the plaintiffs had been sold by tax deed to the defendant McMahon. By their bill the plaintiffs sought to invalidate certain acts done and instruments executed by the treasurer of the defendant town of Bourne and the defendant Commissioner of Corporations and Taxation for the Commonwealth which preceded and resulted in the sale.

The instant proceedings stem from an order entered by the Land Court in another case wherein McMahon under G. L. c. 60, § 80B, sought to establish title to the land conveyed to him under the tax deed.

The judge made findings of fact. The evidence is not reported. We summarize the facts found.

The plaintiffs acquired title to the locus on November 11, 1954. The real estate taxes on the property for the year 1955 were not paid. On November 29, 1955, the tax collector of Bourne pursuant to G. L. c. 60, § 16, mailed a demand for the payment of the taxes. The demand was sent to 57 Hilda Street, Quincy, and then to 107 Fayette Street, Quincy. The plaintiffs did not receive the demand. They have lived at 1 Truro Street, Quincy, for the past fifteen years. They had never lived at 57 Hilda Street or at 107 Fayette Street. They never had a place of business or employment at either place. They never told anyone that they did.

On April 27, 1956, the 1955 taxes still being unpaid, the land was taken for the town by the collector in accordance with G. L. c. 60, § 53. Preliminary thereto the statutory requirements of notice by publication and posting had been complied with. The instrument of taking was recorded on May 2, 1956, as required by G. L. c. 60, § 54.

Taxes on the locus for the years 1956, 1957, and 1958 were not paid.

On October 21, 1958, the town treasurer, under G. L. c. 60, § 79, applied to the Commissioner of Corporations and Taxation for the Commonwealth (the Commissioner) for an ''affidavit of low value.'' The Commissioner, after making

the inquiry thereupon required under G. L. c. 60, § 79, issued the affidavit to the town treasurer on November 4, 1958. The affidavit was duly recorded on November 20, 1958. In further compliance with c. 60, § 79, the town treasurer posted in the town hall a notice of his intention to sell the land at public auction. On December 11, 1958, the sale was made to the defendant McMahon, the highest bidder, who on December 15, 1958, recorded the deed which the treasurer had executed and delivered to him.

The final decree stated that "Title to the locus is in the defendant . . . by virtue of the treasurer's deed dated December 15, 1958, and recorded on the same day . . . ."

The plaintiffs argue that the decree is in error on two independent grounds. First, they contend that the town did not acquire legal title to the locus and therefore could not convey a good title to the defendant McMahon. In support of this contention they assert that the town collector did not comply with the provisions of G. L. c. 60, § 16, which provides in pertinent part, "The collector shall, before selling the land of a resident, or non-resident . . . for his tax, serve[1] on him a statement of the amount thereof with a demand for its payment. . . . Demand shall be made by the collector by mailing the same to the last or usual place of business or abode, or to the address best known to him, and failure to receive the same shall not invalidate a tax or any proceedings for the enforcement or collection of the same." The judge found "that the tax collector complied with the provisions of this section."[2]

---

[1] The service authorized in c. 60, § 16, is, by virtue of its own terms and the definitions in c. 60, § 1, not the service required elsewhere in the statute.

[2] General Laws c. 60, § 39, provides: "If . . . an owner of land causes a notice, designating a place in the town where such land lies at which all papers relative to taxes on such land which are to be served on him may be left, to be recorded in January of any year in the office of the clerk of such town and, during said month, to be delivered to the collector thereof, the collector shall serve at such place any notice, demand for payment or other paper relating to the taxes on such land which is to be served by him. The collector shall not advertise the sale of such land for two months after the time of a demand so made." The judge found that the plaintiffs never filed a notice under this section; that they knew taxes would have to be paid; and that they made no inquiry upon failure to receive tax bills. These findings, however, were properly made independently of, and not as any basis for, the further finding of compliance by the tax collector with the provisions for demand contained in G. L. c. 60, § 16.

The plaintiffs argue that this finding is not supported by the subsidiary facts stated by the judge. That test, however, is not applicable here. The subsidiary facts set out by the judge were voluntarily stated. Where there is a voluntary report of the facts, the question whether the subsidiary findings support a general finding arises only when it appears that the judge has purported to find all of the material facts or that he has based his finding solely on the subsidiary facts stated by him. *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 561–562, and cases cited. *Wilkins* v. *Berkeley Realty Corp.* 311 Mass. 148, 151. *Jose* v. *Lyman,* 316 Mass. 271, 277. *Warner* v. *Selectmen of Amherst,* 326 Mass. 435, 436. Cf. *Carey* v. *Planning Bd. of Revere,* 335 Mass. 740, 744. Here the judge did not state that his findings were "all of the material facts." On the contrary he explicitly prefaced each separate finding, including the specific finding under consideration, with the phrase "on all the evidence."[3] Since the evidence is not reported and since there are no findings inconsistent with the particular finding under consideration, we accept the latter as true. *Sturnick* v. *Watson,* 336 Mass. 139, 143. See *Dodge* v. *Anna Jaques Hosp.* 301 Mass. 431, 435, and cases cited.

The judge's finding that there was compliance with G. L. c. 60, § 16, obviates consideration of the plaintiffs' argu-

---

[3] The judge introduced his findings with the phrase: "The material facts are." This prefatory expression is not necessarily an indication that the facts thereafter stated were intended to be the sole basis for a later finding which the judge explicitly stated was made "on all the evidence." Compare *McAndrew* v. *Quirk,* 329 Mass. 423, 425. To the contrary, there is confirmation outside the official record that all of the material facts were not stated. Included in the printed record on appeal are an interrogatory by the plaintiffs as to how the Hilda Street and Fayette Street addresses were obtained, and the town clerk's answer thereto which was, in part, "The address '107 Fayette Street, Quincy,' was apparently obtained from a letter addressed to the . . . [plaintiffs] at 57 Hilda Street, Quincy, and returned to the Collector of Taxes by the United States Post Office Department." If the Fayette Street address was so obtained, such fact would support the finding of compliance with that part of c. 60, § 16, which authorizes the collector to mail "to the address best known to him." We do not understand *Kershaw* v. *Zecchini,* 342 Mass. 318, to be contrary to our holding, although we reiterate the suggestion there made that "To avoid uncertainty, a judge should make it clear whether his conclusions are based on subsidiary facts found by him or on the evidence." We note, however, that the findings in the instant case were filed prior to the release of our opinion in the *Kershaw* case.

ment as to the effect of noncompliance.  Compare *Lynn* v.
*Lynn Commercial Realty Co.* 286 Mass. 368, 370; *Boston* v.
*Boston Port Dev. Co.* 308 Mass. 72, 75.  The plaintiffs point
to no other ground upon which the taking by the town could
be held invalid.  We, accordingly, hold that the title to the
locus vested in the town upon the recording of the instru-
ment of taking under G. L. c. 60, § 54.

The plaintiffs' second contention is that the sale of the
land by the town to McMahon was invalid.  They allege a
failure of compliance with the provisions of G. L. c. 60, § 79,
under which the sale of the land was made.  The contention
is best understood by a general reference to the statutory
provisions relating to the sales of land taken for nonpay-
ment of taxes.  As stated above, before a town can take
land for nonpayment of real estate taxes, it must make a
demand for payment in accordance with G. L. c. 60, § 16.
The next step is prescribed by G. L. c. 60, § 53, which pro-
vides: "If a tax on land is not paid within fourteen days
after demand therefor and remains unpaid at the date of
taking, the collector may take such land for the town, first
giving fourteen days' notice of his intention to exercise
such power of taking, which notice may be served in the
manner required by law for the service of subpoenas on
witnesses in civil cases or may be published, and shall con-
form to the requirements of section forty.[4]  He shall also,
fourteen days before the taking, post a notice so conform-
ing in two or more convenient and public places."  When
land is so taken and the instrument of taking is duly re-
corded, "[t]itle to the land so taken shall thereupon vest
in the town, subject to the right of redemption" (G. L. c. 60,
§ 54).  The title thus acquired by the town remains sub-
ject to redemption by the owner for at least two years after
the taking (G. L. c. 60, §§ 62, 65).

The plaintiffs do not contend that G. L. c. 60, §§ 53 and
54, were not complied with.

---

[4] General Laws c. 60, § 40, requires, in summary, that the notice contain a
substantially accurate description of the land to be sold, the amount of the tax
assessed, and the names of owners known to the collector.

After the expiration of the two year period, the town has available two alternate methods by which it can render the title absolute and marketable, and thereby get payment of its taxes.

1. The first method, which may be followed in any case, involves the judicial process. The town may file a petition in the Land Court to foreclose all rights of redemption. Under this method, governed by G. L. c. 60, §§ 64–75, notice of the proceedings is required at the least by registered mail to all interested parties (c. 60, § 66). The latter may answer to the petition and offer to redeem. Redemption, upon terms, rests in the discretion of the Land Court (c. 60, § 68). If the Land Court enters a decree barring all rights of redemption (c. 60, § 69), the title of the town thereby becomes absolute (c. 60, § 64).

2. The second method, applicable to low value property, involves the administrative, rather than the judicial, processes of government. It is found in G. L. c. 60, § 79.[5] It is

---

[5] "After two years from the taking or purchase by a town of any parcels of land for non-payment of taxes, the commissioner may, and on written application of the town treasurer shall, inquire into the value of such parcels and the validity of tax titles held thereon. As a part of such inquiry the commissioner shall, upon written request therefor by any person in interest, hear such person relative to any matter pertaining to such inquiry. If the commissioner is of opinion that such parcels are of insufficient value to meet the taxes, interest and charges, and all subsequent taxes and assessments thereon, together with the expenses of a foreclosure under section sixty-nine, that none of such parcels exceeds one thousand dollars in value, and that the facts essential to the validity of the tax titles on such lands have been adequately established, he shall make affidavit of such finding, which shall be recorded in the registry of deeds for the district wherein the land lies.

"The commissioner may require the treasurer to include in his application a statement under the penalties of perjury setting forth such information appearing in the records of the assessors and of the collector and tending to establish the validity of the tax titles on such parcels of land as the commissioner deems meet. The statement so made, or such portion thereof as the commissioner finds pertinent, may be incorporated in his affidavit and, when recorded, shall be prima facie evidence of such facts.

"Upon the recording of the affidavit the treasurer may sell all the parcels included therein, severally or together, at public auction to the highest bidder, first giving notice of the time and place of sale by posting a notice of the sale in some convenient and public place in the town fourteen days at least before the sale; provided, that the treasurer at such auction may reject any bid which he deems inadequate. If the sale under this section shall not be made within four years from said taking or purchase, it shall be made by the treasurer for the time being when he deems best, or at once upon service on him of a written demand by any person interested therein. The treasurer shall execute and deliver to the highest bidder whose bid has not been rejected as

obviously designed as a means, more economical and more expeditious than the first method, to collect unpaid taxes on land of low value, while affording, nevertheless, reasonable administrative safeguards to protect the rights of the owner. It is this second method which was followed by the town in the case before us.

The plaintiffs contend that the sale to the defendant McMahon under this section was invalid on the ground that from the facts submitted to the Commissioner by the treasurer of Bourne pursuant to the Commissioner's request, the Commissioner "did not have an opinion . . ., nor could he reasonably have had . . . an opinion" that the land in question was "of insufficient value to meet the taxes, interest and charges, and all subsequent taxes and assessments thereon, together with the expenses of a foreclosure under section sixty-nine."

That the Commissioner did in fact have such an opinion is evident from the affidavit itself which we have as an exhibit.

The further contention, that the Commissioner could not reasonably have had such an opinion, is one which, as we construe c. 60, § 79, is not open to the plaintiffs. This court said in *Napier* v. *Springfield*, 304 Mass. 174, where the constitutionality of § 79 was upheld, "The general trend of decisions indicates that once a valid assessment of taxes and a sale [or taking] for nonpayment of the same have been made, the method of foreclosure of the right to redeem lies within the legislative discretion." 304 Mass. at 178. It seems clear from the language of § 79 that the only condi-

inadequate a deed without covenant except that the sale has in all particulars been conducted according to law. Such deed shall not be valid unless recorded within sixty days after the sale. Title taken pursuant to a sale under this section shall be absolute upon the recording of the deed of the treasurer in the proper registry of deeds within such sixty days.

"If the amount received from the sale is more than the taxes, interest and charges, and subsequent taxes and assessments, on all lands included in the sale, together with the expenses thereof, the balance shall be deposited with the town treasurer to be paid to the person entitled thereto if demanded within five years, otherwise it shall enure to the town. If such surplus results from the sale of several parcels for a lump sum, it shall be held as aforesaid for the several owners in proportion to the prices at which the several parcels were originally taken or purchased by the town."

tions precedent imposed by the Legislature upon the treasurer's power to sell the land and terminate effectively all rights of redemption under this section are (1) the issuance of the affidavit by the Commissioner, (2) the proper recording of the affidavit, and (3) the posting of fourteen days' notice of the intended sale. We perceive no legislative intent to impose the additional condition that the Commissioner's opinion as contained in the affidavit be "correct," if indeed the "correctness" of the Commissioner's opinion as to value could ever be precisely determined until after completion of the sale. In *D'Olimpio* v. *Jancaterino*, 304 Mass. 200, 204, this court stated that "it was not for the city treasurer to question the decision of the commissioner in a matter solely within the jurisdiction of the latter to decide; and, having received the authority contained in the certificate of the commissioner, the city treasurer could and did properly sell the land in question."

We note further that § 79 provides: "If the sale under this section shall not be made within four years from said taking or purchase, it shall be made by the treasurer for the time being when he deems best, *or at once upon service on him of a written demand by any person interested therein*" (emphasis supplied). Under this provision it is seen that there may arise the situation where the treasurer, who cannot question the Commissioner's affidavit, would not only have the power to sell but also be under a duty to sell.

Finally we note that § 79 in terms contemplates the contingency of an "erroneous" opinion of the Commissioner at least to the extent that it provides: "If the amount received from the sale is more than the taxes, interest and charges, and subsequent taxes and assessments, on all lands included in the sale, together with the expenses thereof, the balance shall be deposited with the town treasurer to be paid to the person entitled thereto if demanded within five years . . . ."

In our opinion, this deliberate legislative enactment for the collection of taxes through an administrative process covering the sale of, and the termination of redemption rights in, land which is believed to be of low value by the town treasurer who is supported in his belief by the affida-

vit of the Commissioner of Corporations and Taxation for the Commonwealth, makes quite incompatible the plaintiffs' contention that after the sale has been made its validity and effectiveness can be attacked on the basis of the "incorrectness" or unreasonableness of the Commissioner's opinion.

Section 79 states: "Title taken pursuant to a sale under this section shall be absolute upon the recording of the deed of the treasurer in the proper registry of deeds within . . . sixty days." This provision does not attempt to validate the title of a town acquired by an invalid taking. *McHale v. Treworgy,* 325 Mass. 381, 385. It does, however, in our opinion provide for a final and effective termination of redemption rights in land validly taken, where the affidavit of the Commissioner is issued and recorded, where the treasurer otherwise complies with the provisions of § 79, and where the treasurer's deed is properly recorded within sixty days of the sale. All this was done in the present case.

*Decree affirmed.*