Hazel E. West *vs.* Board of Selectmen of Yarmouth & another.

Bristol.    February 5, 1963. — March 4, 1963.

Present: Wilkins, C.J., Spalding, Whittemore, Kirk, & Reardon, JJ.

*Taxation,* Real estate tax: foreclosure of tax title, redemption, low value land.

Where, in proceedings under G. L. c. 60, § 79, respecting land of low value on which the town held a tax title, the land was sold and conveyed to the town without notice of the sale, other than the statutory notice by posting, to the then owner of the land, who was known as such to officers of the town and who paid taxes subsequent to those in the tax title account without being informed of the prior unpaid taxes, she was entitled in equity, while the town still held title to the land, to redeem by paying the unpaid taxes and proper charges and thereupon to receive a conveyance of the land from the town, although the town had offered the land for sale and had accepted a deposit from a prospective purchaser.

BILL IN EQUITY filed in the Superior Court on May 12, 1961.

The suit was reported by *Smith, J.*

*Charles E. Bennett* for the plaintiff.

*A. Harold Castonguay,* for the defendants, submitted a brief.

WILKINS, C.J.   This bill in equity against the board of selectmen and town treasurer of Yarmouth seeks a declaration that a tax taking and subsequent sale of land were invalid and an order that the land be reconveyed to the plaintiff upon the payment of taxes and other charges.   The defendants appeared but filed no answer.   They have filed a token brief.   The case was submitted upon a statement of agreed facts which amounts to a case stated, and is here upon a report without decision by a judge of the Superior Court.   G. L. (Ter. Ed.) c. 214, § 31.

In 1957 the plaintiff was divorced, and her husband, on an unstated date in that year, conveyed to her his interest in three lots on Wimbledon Way which they had held as tenants by the entirety.   From 1953 to 1957 they had been in litigation about an insurance business.   The husband excluded her from the business office and kept her mail.

The husband did not pay the 1954 real estate taxes, which with interest and expenses amounted to $21.67.   Neither did he pay the 1955 taxes of $16.64 nor the 1956 taxes of $19.52.   On December 28, 1955, the town collector took the property for the town for nonpayment of the 1954 taxes. G. L. c. 60, § 53 (as amended through St. 1933, c. 164, § 3).[1] The plaintiff received no notice, but an instrument of taking was recorded in the Barnstable County Registry of Deeds in accordance with G. L. c. 60, § 54 (as amended through St. 1938, c. 339, § 2), which also provides, "Title to the land so taken shall thereupon vest in the town, subject to the right of redemption."   In *Johnson* v. *McMahon,* 344 Mass. 348, 352, it was said: "The title thus acquired by the town

---

[1] Section 53, as now material, reads, "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town . . . ."

remains subject to redemption by the owner for at least two years after the taking. (G. L. c. 60, §§ 62, 65)."

Then, as impliedly appears from the agreed facts, the town treasurer set in operation the procedure for the sale of land of low value taken by a town under a tax title. G. L. c. 60, § 79 (as amended through St. 1941, c. 594, § 1).[1] *Johnson* v. *McMahon*, 344 Mass. 348, 353–356.

In December, 1958, an affidavit of low value by the Commissioner of Corporations and Taxation was recorded in the Barnstable County Registry of Deeds. On December 15, 1958, the town treasurer "posted notice of foreclosure of real estate taxes on the property subject to this bill in equity"[2] at the town office. All the provisions of G. L. c. 60, § 79, were complied with. On December 30, 1958, the town treasurer conveyed the land to the town by deed recorded in the registry.

The plaintiff "received tax bills from the town . . . in 1957 and 1958 and made payments on account of taxes in these years of $19.04 and $29.28." We infer that this ambiguous statement means that the taxes for 1957 and 1958 were respectively $19.04 and $29.28 and that the plaintiff paid them in full.[3] No notice was given her of the low value

---

[1] "After two years from the taking or purchase by a town of any parcels of land for non-payment of taxes, the commissioner may, and on written application of the town treasurer shall, inquire into the value of such parcels and the validity of tax titles held thereon. . . . If the commissioner is of opinion that such parcels are of insufficient value to meet the taxes, interest and charges, and all subsequent taxes and assessments thereon, together with the expenses of a foreclosure under section sixty-nine, that none of such parcels exceeds one thousand dollars in value, and that the facts essential to the validity of the tax titles on such lands have been adequately established, he shall make affidavit of such finding, which shall be recorded in the registry of deeds for the district wherein the land lies. . . . Upon the recording of the affidavit the treasurer may sell all the parcels included therein, severally or together, at public auction to the highest bidder, first giving notice of the time and place of sale by posting a notice of the sale in some convenient and public place in the town fourteen days at least before the sale . . . . The treasurer shall execute and deliver to the highest bidder whose bid has not been rejected as inadequate a deed without covenant except that the sale has in all particulars been conducted according to law. Such deed shall not be valid unless recorded within sixty days after the sale. Title taken pursuant to a sale under this section shall be absolute upon the recording of the deed of the treasurer in the proper registry of deeds within such sixty days. . . ."

[2] The precise meaning of the phrase "subject to this bill in equity" is not clear. The present bill was not filed until May 12, 1961.

[3] We infer also that the 1954, 1955, and 1956 taxes had been set up in a tax title account. G. L. c. 60, § 61 (as amended through St. 1936, c. 93, § 1). See *Boston* v. *Gordon*, 342 Mass. 586, 588–589.

foreclosure as provided in G. L. c. 60, § 80A, inserted by St. 1941, c. 594, § 3,[1] nor was she ever informed at the time she made the payments that prior taxes were still owed. In 1959 she first learned that the taxes for 1954, 1955, and 1956 had not been paid. Immediately she offered to re- deem, but the town refused. "On several subsequent occa- sions she offered to pay all of the back taxes, interest and expenses, but the town refused to permit her to redeem." By this refusal the plaintiff was excused from any require- ment of tender. *Hazard* v. *Loring,* 10 Cush. 267, 269. *Hil- lis* v. *O'Keefe,* 189 Mass. 139, 141. *Gilman* v. *Cary,* 198 Mass. 318, 319. *Butler* v. *Gleason,* 214 Mass. 248, 253. The plaintiff still offers to redeem.

In 1961 the town offered the property at public sale. On an unstated date one MacLean made the high bid of $910, and on May 15, 1961, sent the town a check for $920 in pay- ment. In the meantime on May 12, 1961, a restraining or- der enjoined the sale or conveyance of the property pend- ing this suit. At the suggestion of the town counsel this check was returned to MacLean, who on November 6, 1961, paid a $100 deposit.

We infer that the 1957 and 1958 tax bills bore the name of the plaintiff, and that her interest in the property and her address were fully known to officers of the town. Notwith- standing this, in December, 1958, the only notice of fore- closure was by posting at the town office. In 1939 such a limited notice was held to be constitutional. *Napier* v. *Springfield,* 304 Mass. 174, 177–179. But compare *Mullane* v. *Central Hanover Bank & Trust Co.* 339 U. S. 306, 318–320, decided in 1950, and *Schroeder* v. *New York,* 371 U. S. 208, decided December 17, 1962. It is the policy of the law to favor redemption from tax sales. *Union Trust Co.* v. *Reed,*

---

[1] "Any person, having a right of redemption or any other interest in the land conveyed or purporting to be conveyed under section seventy-nine or sec- tion eighty, upon whom service of the notice of sale provided in said section seventy-nine has been made by registered mail, who, prior to the sale, neither redeems the land nor brings proceedings to enjoin the sale, shall, upon the recording of the deed as required by said section seventy-nine or said section eighty, be forever barred from raising any question concerning the validity of the title conveyed thereby . . . ."

213 Mass. 199, 201. These equitable proceedings are not to be rendered futile by satisfying minimal constitutional guarantees. The attempted sale has not been completed. No deed to MacLean has been recorded. The record title continues to be in the town. The property is held subject to the plaintiff's right to redeem. In equity and good conscience she should be allowed to exercise that right.

General Laws c. 60, § 80A, recognizes that proceedings may be brought to enjoin a sale, and that the right to redeem is not barred before the recording of the deed.

As the title to the land is in the town, a motion to amend the bill by adding the town as a party defendant is to be allowed in the Superior Court. Thereafter a final decree is to enter declaring that the plaintiff is entitled to redeem and ordering the town to convey the property to the plaintiff by quitclaim deed upon payment of all unpaid taxes and proper charges including interest. The plaintiff is to have costs of suit, including costs of appeal.

*So ordered.*