CARL A. BIGHAM & others *vs.* COMMISSIONER OF
CORPORATIONS AND TAXATION.

Middlesex.    September 16, 1976. — November 2, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Taxation.* Real estate tax: foreclosure of tax title; redemption; low
value land.

Owners of land determined to be of "low value" by the Commissioner
of Corporations and Taxation were entitled to bring an action prior
to the sale of the land challenging the administrative findings made
under G. L. c. 60, § 79, which permitted the treasurer of a town to
sell the land taken for nonpayment of taxes without resorting to ju-
dicial foreclosure proceedings. [271-273]

PETITION filed in the Land Court on April 5, 1973.

The case was heard by *Sullivan, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Margot G. Botsford,* Assistant Attorney General, for the
Commonwealth.

*James W. Killam, III,* for the plaintiffs.

REARDON, J.    The plaintiffs Carl A. Bigham and Vir-
ginia I. Bigham, husband and wife, are delinquent tax-
payers who seek in this action to redeem their land and
to enjoin the sale of their land as land of "low value" by
the treasurer of the town of North Reading (treasurer).
The plaintiff Melrose Savings Bank is the holder of a mort-
gage on that land. Pursuant to G. L. c. 60, §§ 79-80B, a
judge of the Land Court in a careful and detailed decision
found and ruled that the affidavit of the Commissioner of
Corporations and Taxation (Commissioner) was errone-
ous, and that the Bighams' right of redemption could not

be foreclosed pursuant to the provisions of G. L. c. 60, § 79, except as to one lot of their land. The judge permanently restrained the treasurer from selling lots numbered 71 to 87 pursuant to the provisions of § 79. The Commissioner appealed.[1]

It appears that the Bighams are owners of seventeen parcels of land in North Reading which are part of a subdivision known as Elmwood Hill Village and had planned to develop and build on these lots. By 1969 most of the development, including the installation of roads, water service, drainage and sidewalks, had been completed, but in February, 1971, the town took the land for nonpayment of 1969 real estate taxes. Subsequently the treasurer applied to the Commissioner for a determination that the parcels were land of low value pursuant to § 79, and the Commissioner made such a determination. The treasurer then initiated proceedings to sell the parcels and, upon notice, the Bighams commenced this action.

We hold that the plaintiffs are entitled to bring this action challenging the administrative findings on which the treasurer's statutory authority to sell land taken for nonpayment of taxes was predicated. Chapter 60, § 79, as amended through St. 1968, c. 157, provides that the treasurer may sell such land without resorting to judicial foreclosure proceedings if the Commissioner, after inquiring "into the value of such parcels and the validity of tax titles held thereon," makes the following findings of fact: (1) that the parcels "are of insufficient value to meet the taxes, interest and charges, and all subsequent taxes and assessments thereon, together with the expenses of a foreclosure"; (2) that the value of each parcel is not more than $2,500; and (3) that "the facts essential to the validity of the tax titles on such lands have been adequately established."

The Bighams contend that the Commissioner's determination of the value of their land was factually erroneous.

---

[1] Since it makes no difference in the result, we do not consider the failure of the treasurer of the town of North Reading to appeal from the decision entered in this action.

This action has provided them their first opportunity to offer evidence of value, for while § 79 requires the Commissioner to hear any interested person as part of his inquiry it does not demand that notice of the inquiry be given to the landowners. There is no suggestion that the Bighams were aware of the treasurer's request for a low-value determination until after the Commissioner's affidavit had issued and a date had been set for the public auction.

The certification of land as being of low value has important procedural consequences which may significantly impair the landowner's rights. Low-value sales under § 79 are made without judicial supervision. The owner is denied the notice, hearing and court determination of foreclosure or permission to redeem which are accorded in other tax sales. C. 60, §§ 64-75. Indeed § 79 makes no provision for redemption by the delinquent landowner.

The constitutionality of the low-value foreclosure proceedings has previously been considered by this court, *Napier* v. *Springfield,* 304 Mass. 174 (1939), and, because of our resolution of the present case, need not be reexamined here. We repeat that § 79 was "obviously designed as a means, more economical and more expeditious than . . . [judicial foreclosure], to collect unpaid taxes on land of low value, while affording, nevertheless, reasonable administrative safeguards to protect the rights of the owner." *Johnson* v. *McMahon,* 344 Mass. 348, 354 (1962). Having approved the statute on the assumption that such safeguards were intended, we will not now adopt an interpretation of § 79 which permits these protections to be undercut. Thus we hold that a landowner may challenge the Commissioner's determination of low value by instituting judicial proceedings prior to the sale of the land.

Indeed c. 60, § 80A, indicates that the General Court intended to permit an owner to bring proceedings to enjoin the sale prior to the date of auction. Considering § 79 in light of § 80A, we find that the former section creates an administrative structure designed to operate unimpeded unless subjected to specific challenges by individual land-

owners. We previously have had occasion to note that a challenge to the validity of the Commissioner's determination of value is not timely once the sale has been concluded and a deed recorded. *Johnson* v. *McMahon, supra* at 356. In such circumstances the concern with preserving the integrity of the record title and protecting good faith purchasers is apparent. Where these considerations are absent, however, this court has not hesitated to permit an owner to challenge actions of a municipality. *West* v. *Selectmen of Yarmouth,* 345 Mass. 547 (1963). Cf. *Brown* v. *Boston,* 353 Mass. 740 (1968).

There has been no sale in the case at bar. No good faith purchaser has acted in reliance on the state of the record or on any acts of the treasurer. We recognize that permitting a landowner to challenge the Commissioner's determination of low value will occasionally delay the expedited procedure contemplated by c. 60, § 79. But those occasions will be infrequent and will be more than warranted by the need to maintain a fair and equitable procedure for the sale of confiscated property. We require only that, prior to a sale, a landowner be given a realistic opportunity, either before or after low-value determination, to demonstrate that the Commissioner's determination of land value is no longer an accurate reflection of the true worth of the land. We cannot find such a realistic opportunity in the present case where the landowners had no notice of their right to present evidence of increased value prior to the Commissioner's determination. This holding is particularly compelled in this case where the land had been so improved that the owners in good faith would not have anticipated its being treated as low-value property.

We thus conclude that the Land Court judge properly allowed the plaintiffs to maintain this challenge to the Commissioner's determinations. The judge found that there was sufficient evidence to establish that the value of each parcel exceeded the statutory limit of $2,500. We find no grounds for disturbing this conclusion.

.                          *Decision affirmed.*