FRANK J. HEBDA & another *vs.* BRUCE W. O'BRIEN & others.

Hampden.    September 11, 1978. — November 15, 1978.

Present: HALE, C.J., ARMSTRONG, & BROWN, JJ.

*Taxation*, Real estate tax: foreclosure of tax title, redemption. *Deed*, Tax deed.

Where the former owners of a parcel of land failed to perfect their redemption of the property by recording a proper certificate of redemption in the registry of deeds, the city acquired a valid title from a subsequent sale of the parcel to itself under G. L. c. 60, §§ 79, 80, which was sufficient to convey absolute title to a subsequent good faith purchaser for value. [663–664]

CIVIL ACTION commenced in the Superior Court on September 10, 1974.

The case was heard by *Moriarty, J.*

*David A. Berndt* for the plaintiffs.

*Richard T. Dolan* for the defendants.

BROWN, J. The plaintiffs, Frank and Katherine Hebda, commenced this action in the Superior Court under G. L. c. 231A, seeking to have two deeds declared null and void and to be declared the owners of the parcel of land referred to in those deeds. The plaintiffs appeal from an ensuing judgment favorable to the defendants. We affirm.

We have before us the judge's "Findings, Rulings and Order for Judgment." The evidence is reported. The judge's findings will not be set aside unless clearly erroneous. *Sanguinetti* v. *Nantucket Constr. Co.*, 5 Mass. App. Ct. 227, 228–229 (1977).

We summarize the judge's findings of fact. In 1922 Frank J. Hebda (Frank) acquired title to an undivided

one-half interest in two separate parcels of land located in the city of Westfield (city) by a deed from his uncle. Taxes assessed by the city for the year 1933 were not paid on either parcel, and on November 19, 1934, the "parcels were conveyed to the city . . . by two tax collector's deeds pursuant to the provisions of G. L. c. 60, § 48." See *Johnson* v. *McMahon*, 344 Mass. 348, 352 (1962). "The tax bill for both parcels had been sent to [Frank] and his uncle as a single bill."[1]

On May 5, 1936, a Probate Court judge appointed a commissioner to partition the two parcels between Frank and his uncle. Both parcels were then sold at a public auction to the plaintiffs, who took title by a commissioner's deed dated June 11, 1936. On June 24, 1936, the plaintiffs paid to the city the sum of $546.75 to redeem both parcels from the city's tax titles. See G. L. c. 60, § 62, as amended through St. 1935, c. 414, § 2. This sum was sufficient to satisfy all taxes due on both parcels for the years 1933 to 1935, inclusive, along with accumulated interest and the cost of recording a certificate of redemption. A certificate of redemption was issued to the plaintiffs but it referred to only one of the parcels the plaintiffs sought to redeem (see G. L. c. 60, § 63, as appearing in St. 1933, c. 325, § 11); it made no mention of the second parcel, an unfenced and undeveloped lot known as Munger Hill. Compare *Nalley* v. *Hanson*, 11 Wash. 2d 76, 84–85 (1941). Contrast *Gilley* v. *Southern Corp.*, 194 Ark. 1134, 1137–1138 (1937). On January 16, 1937, pursuant to G. L. c. 60, § 79 (as amended through St. 1935, c. 173, § 1), the Commissioner of Corporations and Taxation determined that the city of Westfield held the Munger Hill lot under a tax title and that it was "of insufficient value to meet the taxes, interest and charges, and all subsequent taxes and assessments thereon, together with the expenses of a foreclosure of the rights of redemption." In the Commis-

---

[1] The tax bills for the years 1934 and 1935 were sent in the same manner.

sioner's affidavit (see G. L. c. 60, § 79) Frank and his uncle were identified as the persons upon whom demand for the tax was made and 1933 was cited as the year for which the land was being sold. On February 24, 1937, the city treasurer executed a deed to the city which purported to grant all "right, title and interest which the city had acquired under the tax collector's deed of November 19, 1934, in the Munger Hill lot to the City." See G. L. c. 60, § 80, as appearing in St. 1935, c. 173, § 2. That parcel was conveyed by the city to the defendant O'Brien and one Benjamin F. Roberts (Roberts) by a deed executed in 1950.[2] Roberts conveyed his interest to the defendant Wilma G. Roberts (Roberts's wife) in 1967.

We need not discuss all the contentions raised by the plaintiffs because we conclude (as did the trial judge) that "the right or title which the City of Westfield had acquired in the Munger Hill lot had not been extinguished when the treasurer's deed to the city was executed in 1937." See G. L. c. 60, § 63. Consequently, title to the Munger Hill lot remained in the city after Frank paid all the "taxes due on both parcels for the years 1933, 1934 and 1935." Contrast *Pass* v. *Seekonk*, 4 Mass. App. Ct. 447 (1976).

We reach this conclusion because we agree with the judge's ruling that "[i]t is the recording of the certificate and not the payment of the tax that extinguishes the city's interest." The language in G. L. c. 60, § 63, as so appearing, is clear and quite specific that "the recording of the certificate [of redemption] in [the proper] registry shall extinguish all right and title acquired under the collector's deed."

We think it is clear that the plaintiffs could, after Frank paid the taxes in 1936, have demanded a proper

---

[2] The judge did not specifically so find, but for all that appears the record title at the time O'Brien and Roberts took title from the city would not have disclosed an interest on the part of the plaintiffs that had not been foreclosed. See *Bigham* v. *Commissioner of Corps. & Taxn.*, 371 Mass. 270, 272–273 (1976).

certificate of redemption and recorded it, thereby avoiding the 1937 treasurer's deed. However, this was so only until a good faith purchaser for value—in this instance, O'Brien and Roberts—bought the property and recorded the deed. See *Bigham* v. *Commissioner of Corps. & Taxn.*, 371 Mass. 270, 272–273 (1976). Compare *West* v. *Selectmen of Yarmouth*, 345 Mass. 547, 551 (1963).

We hold that on this record the plaintiffs never perfected their redemption of the property in question (see G. L. c. 60, 62) and thus the city acquired a valid title from the subsequent sale to itself in 1937. See *Johnson* v. *McMahon*, 344 Mass. at 356. The title thus acquired (and recorded) was sufficient to convey absolute title to the Munger Hill lot to O'Brien and Roberts. See G. L. c. 60, § 79. Compare *Johnson* v. *McMahon, supra.*

In any event, even if we were to assume that the plaintiffs might have been entitled to avoid the treasurer's deed for some period of time after the conveyance to O'Brien and Roberts, we would agree with the judge that the plaintiffs' action is barred by laches.[3] *Garfield* v. *Garfield*, 327 Mass. 529, 534 (1951). *Randon* v. *Edstrom*, 1 Mass. App. Ct. 796, 798 (1974). See *Travers* v. *Grossman*, 352 Mass. 182, 184–185 (1967). See also in this regard *Calkins* v. *Wire Hardware Co.*, 267 Mass. 52, 69 (1929), and cases cited (discusses implications of relevant statute of limitations in treatment of delay).

*Judgment affirmed.*

---

[3] The judge found that Frank "learned at some time in 1950 that O'Brien and Roberts had received a deed to the Munger Hill lot from the City of Westfield," but the plaintiffs took no action until 1974 to protect their interests or assert their claim.